UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOSE "PO" RODRIGUEZ,

    Plaintiff,

v.                                                       No. SA-18-CV-00713-JKP

DOLLAR GENERAL CORPORATION,
Individually and d/b/a DG Distribution of
Texas, LLC, and d/b/a Dolgen Corp. of
Texas, Inc., and d/b/a Dollar General
Distribution Center of San Antonio,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dollar General Corporation's ("Dollar") Amended Motion for Summary Judgment (ECF No. 27). Plaintiff Jose "Po" Rodriguez ("Rodriguez") responded to the motion (ECF No. 29). Dollar filed a reply and a motion objecting to and moving to strike portions of the summary judgment evidence submitted by Rodriguez (ECF Nos. 30, 31). Rodriguez did not respond to Dollar's objections and motion to strike. After due consideration, the Court denies the motion for summary judgment, denies Dollar's motion to strike paragraph fourteen of Rodriguez's declaration, and denies as moot the remainder of Dollar's objections and motions to strike.

## BACKGROUND

On June 5, 2018, Rodriguez filed suit in the 225th Judicial District, Bexar County, Texas. ECF No. 3-2. Defendant removed the state court proceeding to the District Court on July 12, 2018. ECF No. 3. Rodriguez's original petition, the operative pleading herein, brought claims under the Americans with Disabilities Act (ADA), the Texas Labor Code, the Family Medical

Leave Act (FMLA), and ERISA. ECF No. 3-2 at 6-7. On August 29, 2019, Rodriguez stipulated the dismissal of all claims except those brought under the ADA. ECF No. 21. The operative complaint therefore brings claims for discriminatory termination and failure to accommodate in violation of the ADA. ECF No. 3-2 at 6. Dollar moves for summary judgment on these remaining claims.

Dollar hired Rodriguez in September 2015, as a "Warehouse Supervisor I" in its San Antonio Distribution Center. ECF Nos. 3-2 at 3; 27 at 7; 27-1 at 9:3-9.[1] Warehouse supervisors supervise the timely receipt, stocking, order filling, and shipment of merchandise. ECF No. 27-1 at 14. Dollar distribution centers receive inbound trucks loaded with merchandise from suppliers on one side of the distribution center. Employees unload, sort, and stage the merchandise onto rolltainers, which are loaded onto outbound trucks on the other side of the distribution center. The outbound trucks deliver the merchandise to local Dollar stores. ECF No. 27 at 7-8. Rodriguez supervised the outbound side, consisting of forty to sixty docks spanning approximately one thousand feet. *Id.* at 8. The job requires the employee to physically move throughout the distribution center to monitor the flow of merchandise. ECF No. 27-1 at 14-15.

In May 2016, warehouse manager Benjamin Rodriguez ("Benji") and office manager David Magellan ("Dave") directed Rodriguez to help load rolltainers onto the trucks. ECF No. 27-1 at 29-31. Shortly thereafter, while pushing a rolltainer, Rodriguez felt pain in his feet. *Id.* at 34. Rodriguez sought medical attention for his foot pain on May 22, 2016, at an emergency room visit and on May 25, 2016, with his family physician, who referred him to a podiatrist. *Id.* at 36-39. Thereafter, Dollar granted Rodriguez intermittent leave to manage the pain in his feet. ECF

---

[1] ECF No. 27-1: Rodriguez Deposition excerpts.

No. 27-4 at 3 ¶ 6.[2] Intermittent leave was converted to continuous leave (short term disability "STD") in June 2016. *Id*. ¶ 7; ECF No. 29-3[3] at 3-4. Rodriguez remained on STD, returning to work on July 13, 2016 and July 29, 2016. ECF No. 27-4 at 4 ¶¶ 8-9, 12-13. On July 29, 2016, Rodriguez presented a written work restriction from his physician that requested fifteen minute breaks every two hours. ECF No. 29-3 at 5 (100:21-101:17). He exhausted twenty-six weeks of STD on December 16, 2016. ECF No. 27-4 at 4 ¶¶ 8-9, 12-13. Dollar terminated Rodriguez on February 1, 2017. *Id*. ¶¶ 12-13.

The parties dispute the reason Rodriguez was fired. According to Dollar, Rodriguez was fired because he exhausted his STD and remained unable to return to work and perform the essential functions of his position with or without a reasonable accommodation. ECF No. 27 at 14. Rodriguez argues Dollar's stated reason is unworthy of credence because Dollar previously fired him due to his diabetes and because he was able to perform the essential functions of his position with a reasonable accommodation. ECF No. 29 at 18-20.

The parties also dispute whether Dollar participated in the interactive process with respect to Rodriguez's requests for accommodations. Rodriguez's work restriction required him to take a fifteen minute break every two hours. ECF No. 27-1 at 140, 154, 158, 159. Dollar contends it cannot accommodate this restriction because it creates a backlog on the docks, interrupts the inventory distribution process of the distribution center, and prevents hundreds of Dollar stores from timely receiving their products. ECF No. 27. Rodriguez argues that the fifteen minute breaks do not disrupt the work flow for several reasons including: (1) as a supervisor he decides when to call breaks for his employees; (2) his work flow includes tasks that can be accomplished while sitting; (3) he can get the "break" he needs by being off his feet, which is

---

[2] ECF No. 27-4: Declaration of Dollar General Corporate Representative Nikki Rupright.

[3] ECF Nos. 29-2 and 29-3: Rodriguez Deposition in full.

easily achieved by having access to one of the company's scooters. ECF No. 29 at 13-14; 29-3 at 14.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, he must establish all the essential elements of his claim that warrant judgment in his favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not

competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000).

## BURDEN OF PROOF

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017) (quoting 42 U.S.C. § 12112(a)). A plaintiff may establish an ADA discrimination claim by presenting direct evidence or by proceeding "under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*." *Id.* (citing 411 U.S. 792 (1973) and quoting *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016)). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003)). "In the context of [employment discrimination], direct evidence includes any statement or written document showing a discriminatory motive on its face." *Portis v. National Bank of New Albany, Mississippi*, 34 F.3d 325, 328 (5th Cir. 1994).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. *Id.* "To carry this burden, [the plaintiff] must establish: (1) he has a disability, or

5

was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Id*. (citations and quotations omitted). If the plaintiff carries this burden, the defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. at 241-42. If the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show the defendant's proffered reason is pretextual. *See id* at 242. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id*. at 242 (citation omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id*. (citation omitted).

## DISCUSSION

**A. Objections and Motions to Strike**

In addition to other evidence, Rodriguez filed two declarations and several Job Accommodation Network ("JAN") documents in support of his response to Dollar's motion for summary judgment. ECF Nos. 29-1; 29-5; 29-6; 29-7. Dollar objects to and moves to strike certain statements within the declarations and moves to strike the JAN documents. The Court did not rely on the declarations or the JAN documents in making the conclusions in this opinion. The Court did reference a statement made in paragraph fourteen of Rodriguez's declaration and, for the reason stated below, denies Dollar's motion to strike paragraph fourteen of Rodriguez's declaration. *See* ECF No. 31 at 4-5. The remainder of Dollar's objections and motions to strike are denied as moot.

**B. Motion for Summary Judgment**

**1. Disabled**

Disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The definition of disability shall be construed in favor of broad coverage and to the maximum extent permitted by the terms of the ADA. *Id.* § 12102(4)(A). "The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." *Id.* § 12102(4)(B). "Major life activities" include "walking, . . . and working;" and "operation of a major bodily function," such as the endocrine system. *Id.* § 12102(2).

"An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "An impairment is a disability" when it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as—. . . reasonable accommodations. 42 U.S.C. § 12102(4)(E).

The findings and purposes of the ADA Amendments Act of 2008 ("ADAAA") require courts to construe the definitions of "disability" and "substantially limits" broadly and in favor of expansive coverage. *See* 110 P.L. 325 § 3(4)(A); 29 C.F.R. § 1630.2(j)(1)(i)-(ix). "'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "[W]hether an

7

individual's impairment is a disability under the ADA should not demand extensive analysis." 110 P.L. 325 § 3(4)(A).

Rodriguez's operative complaint alleges the major life activity in which he is substantially limited is walking. Dollar does not dispute that walking is a major life activity. Dollar disputes that Rodriguez is substantially limited in walking. In his response, Rodriguez contends his diabetes "substantially limits his endocrine function which in turn affects his eating, his ability to regulate his blood sugar, his ability to heal, his ability to stand for extended periods of time and his ability to walk for extended periods of time as well as his ability to work, and puts him at risk of having his feet amputated and during a flare up can affect his ability to think clearly and function." ECF No. 29 at 5. Dollar's reply does not dispute that these are major life activities; Dollar disputes that these major life activities were disabling for Rodriguez. ECF No. 30 at 2. Dollar also challenges whether Rodriguez's ability to walk and stand was related to his diabetes, contending Rodriguez's foot pain was due to an injury or plantar fasciitis. *Id*. at 3.

It is undisputed that Rodriguez had diabetes during his employment with Dollar and at the time of his termination. *Id*. at 11; 27-1 at 28:2-10; 145. It is also undisputed that Rodriguez suffered from foot pain during employment with Dollar. *See generally*, ECF Nos. 27, 27-1. Dollar contends that Rodriguez is not disabled for the purpose of his ADA claims, because "there is no evidence that Plaintiff was substantially limited in his ability to walk or stand. Plaintiff walks and stands as needed both in his personal life and at work." ECF No. 27 at 17. However, Dollar also argues that the inability to ambulate is what made Rodriguez not qualified to be employed as a supervisor at Dollar's distribution center. ECF No. 27 at 9-10, 20.

Dollar argues foot pain does not prevent Rodriguez from working or participating in normal daily activities. ECF No. 27 at 11, 17. Rodriguez testified that while he participates in daily activities such as walking around, running errands, and hanging out with his family, he

does so with pain and swelling in his feet. ECF No. 27-1 at 77:2-9. Notably, Dollar did not ask Rodriguez if he takes a break to rest his feet when he experiences foot pain or swelling while doing his normal daily activities.

Dollar also contends that neither diabetes nor foot pain ever caused Rodriguez to request any accommodation from any of his employers both previous and subsequent to his employment with Dollar. ECF No. 27 at 11, 17. Rodriguez testified that following his employment with Dollar, he continued to have pain and swelling in his feet that impacted his ability to work. ECF No. 29-3 at 10 (118:5-10). Rodriguez further testified that the pain and swelling did not prevent him from working because his first employer after Dollar had a work-day that provided breaks at two-hour intervals to all employees. *Id.* at 10-11 (118:5-122:5). However, after the employer asked him to work longer than eight hours in a day, Rodriguez decided to seek other employment. *Id.* at 11 (122:3-5). His second job after Dollar also provided breaks to all workers that comport with the fifteen minute break every two hours restriction. *Id.* at 11 (122:23-125:17).

The evidence establishes that while Rodriguez was employed by Dollar, his physician required him to take a fifteen minute break every two hours to rest his feet. ECF No. 29-3 at 5 (100:21-101:17). The written restrictions included the following statements: "Patient will need to rest feet during flare-up;" "please allow 15 min breaks every 2 hrs;" "prolonged standing/walking exacerbates symptoms;" and "off feet for 15 minutes every two hours." ECF Nos. 27-1 at 140, 154, 158, 159; 29-3 at 6 (104:21-23). The evidence further shows that Rodriguez was referred for therapeutic shoes. ECF No. 27-1 at 144. The podiatry clinical summary notes the "cause of condition" as diabetes and the chief complaint as "constant pain in the balls of his feet." *Id.* at 145.

On the facts presented in this case, a jury could infer that Rodriguez's foot pain was related to his diabetes and caused a substantial limitation on his major life activity of walking.

9

Equally, a jury could infer that Rodriguez's foot pain was unrelated to his diabetes and any limitation to his walking was minor enough that it does not meet the definition of "substantially limits" in the amended ADA. Accordingly, fact issues preclude summary judgment on the issue of disability.

**2. Qualified for the Position**

The ADA defines a "Qualified Individual" as:

> an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). "The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position the individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of the position." 29 C.F.R. § 1630.2(m).

"A plaintiff can establish that he is qualified by showing that either (1) he could perform the essential functions of the job in spite of his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (internal quotations and citations omitted). To succeed on a termination claim, the evidence must establish the plaintiff was qualified for the job at the time of his termination. *Id*. at 418.

Dollar contends Rodriguez cannot establish he was qualified for the job because the essential functions of his position required him to be able to move throughout the warehouse to monitor the flow of inventory and into and out of trailers to supervise the work of his crew. ECF

No. 27 at 20. Dollar argues Rodriguez could not move through the distribution center or "supervise the outbound staging processes at his docks if he were on a break while his entire crew of employees were still working." *Id*. It is undisputed that Rodriguez's work restriction required him to take a fifteen minute break every two hours. ECF No. 27-1 at 140, 154, 158, 159. Dollar argues this meant that Rodriguez could not work at all for fifteen minutes after every two hours of work. ECF No. 27 at 13, 18.

Rodriguez contends the fifteen minutes to rest his feet could have been accomplished by calling breaks for his crew, which, as a supervisor, was at his discretion, or by sitting on a scooter, that scooters were available at the warehouse, and that his use of a scooter was curtailed only because the moment one disembarked a scooter, someone else would mount it and ride away. ECF No. 29-3 at 14 (138:3-7). Rodriguez further contends neither the fifteen minute break nor his use of a scooter interfered with his ability to enter the trailers to perform inspections (an essential function of his job). ECF No. 29 at 12, 14.[4] Accordingly, whether Rodriguez could perform the essential functions of his job, with or without reasonable accommodations, is a question of fact for which there exists conflicting evidence that the Court cannot determine on summary judgment.

### 3. Reasonable Accommodation

"Discrimination includes failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship.'" *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). Under the ADA "undue hardship" is

---

[4] Dollar objects to this contention on the basis that "a statement of what can (or could) happen, is not a statement of what did (or does) actually happen to Plaintiff, thus it offers no evidence to support Plaintiff's claim for disability." ECF No. 31 at 4-5 (citing at 4 n.5 *Douglass v. United States Automobile Assc.*, 79 F.3d 1415, 1429 (5th Cir. 1996)). Dollar misreads his statement. Read in context, it is clear that Rodriguez uses the term "could do" when referring to what he did do. Accordingly, Dollar's motion to strike paragraph 14 of Rodriguez's declaration is denied.

defined as "an action requiring significant difficulty or expense, when considered in light of . . . the nature and cost of the accommodation needed." 42 U.S.C. § 12111(10). The inquiry includes consideration of the entity's financial resources, the effect on expenses and resources, and the impact of a proposed accommodation upon the operation of the facility. *See id.* § 12111(10)(B)(i-iv).

> The ADA defines "reasonable accommodation" to include:
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). To establish a claim for failure to accommodate, a plaintiff must show: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

A plaintiff who does not identify any request for accommodation fails to establish a claim. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020). "[W]here the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). "Once an employee makes such a request, however, the employer is obligated by law to engage in an interactive process: a meaningful dialogue with the employee to find the best means of

accommodating that disability." *Id.* (internal quotations omitted). "[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal interactive process' is traceable to the employee and not the employer." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011).

As noted above, fact issues preclude summary judgment on the issues of disability and whether Rodriguez was qualified for the position. Neither party disputes that Rodriguez's claimed disability was known to Dollar. ECF No. 27 at 11. Dollar contends it reasonably accommodated Rodriguez when it offered him a position in the (re)cycling area, which Rodriguez rejected, and when it provided Rodriguez twenty-six weeks of paid leave. ECF No. 27 at 24. Dollar further argues that Rodriguez's accommodations—a fifteen minute break every two hours, converting his position to a desk job, use of a scooter—were not reasonable because a fifteen minute break would have required other workers to complete his tasks, the job could not be converted to a desk job, and essential functions of the job could not be performed on a scooter. *Id*. at 25-26.

In his deposition testimony, Rodriguez confirmed that in July 2016, he was put in the recycling supervisor position. ECF No. 29-3 at 15 (138:8-10). He testified that he did not complain about the position or say that he could not perform the duties it required. *Id.* (138:10-15). He also testified that he did not decline the position or say that he did not want to continue in the position. *Id.* at 4-5 (97:19-98:1); 15-17 (138:16-18; 146:1-20). He further testified that even though the recycling position was ten to twelve docks as opposed to forty to sixty, and there may have been less walking, the recycling job required him to be on his feet for ten to fourteen hours, depending on the length of the shift. *Id.* at 5 (98:18-100:8); 16 (144:2-23).

Rodriguez testified that he provided to Dollar all the written restrictions from his physician. *Id.* (101:13). He testified in July 2016, he provided one such restriction so that Dollar

13

could consider whether it could accommodate a fifteen minute break every two hours. *Id.* (101:2-17). Rodriguez testified that he spoke with "Alfonso, HR manager" about the restriction, Alfonso looked at the restriction and said, "Dollar General does not accommodate any restrictions." *Id.* at 6 (102:5-8). Rodriguez further testified that Alfonso said he was going to send the request for accommodation to "Matrix" but "there was no way they were going to accommodate the 15-minute breaks every two hours." *Id.* (102:8-11). Rodriguez testified that he never heard from anyone at Dollar or Matrix regarding the request. *Id.* at 6-7 (103:2-14; 106:14-16) ("Like I said earlier, when I talked to Alfonso -- that's the only one I talked to -- and he told me no. No one else ever called me and told me no.")

Rodriguez also testified that he asked if he could use a scooter. *Id.* at 14 (135:9-14). Benji responded that the scooters were meant for managers, so "we would have to look into it." *Id.* (136:5-12). Later, Dave told Rodriguez he was free to use a scooter if one was available. *Id.* (136:15-17). Finding an available scooter was challenging because as soon as one person gets off a scooter, someone else takes it. *Id.* (136:17-137:2). When Rodriguez was able to use a scooter, he was able to complete all the tasks required to do his job because the scooter was small and agile enough to access all the docks. *Id.* (137:6-17).

There is nothing in the evidence to suggest Rodriguez requested as an accommodation converting his position to a desk job. Dollar "anticipated" that Rodriguez would argue that it "could have reasonably accommodated him by converting his Supervisor position into a desk job." ECF No. 27 at 25. Rodriguez made no such argument.

The Court finds that there are genuine issues of fact as to whether Dollar engaged in the interactive process in good faith, whether Dollar provided Rodriguez with any reasonable accommodation, and whether Rodriguez's proposed accommodation (unfettered use of a scooter)

14

would have caused undue hardship to Dollar. Accordingly, the Court concludes that summary judgment is inappropriate on this claim.

**4. Adverse Employment Action**

Rodriguez testified that in July 2016, Dollar terminated him, rescinded the termination, then terminated him again on February 1, 2017. ECF No. 27-1 at 51-52, 67. Specifically, Rodriguez testified that when he returned to work in July 2016, he was called into a meeting with Benji and Dave. ECF No. 27-1 at 51.

> So when I returned to work, Benji Rodriguez, he said that he and Dave want to have a meeting with me. . . . So I went to the meeting, just us three, and he said, What's going on? And I told him that I'm still having trouble with my foot, still swelling, but the doctor said just make sure I -- I keep an eye on it. Any swelling, any redness, be very careful 'cause it could turn into an ulcer. Then he started telling me about his wife's brother or brother-in-law-- I'm not sure --has diabetes, his foot, and it can linger on. He didn't want that with me so at this time they were going to have to let me go. . . . So I was, like, all right. Well, you know, there's nothing I can do. I got up, ready to leave, and then Benji said, well, you know, what's going on? I said, I don't see how you can let me go if, you know, my foot still hurts and all that. So then they went and talked to Erin from HR, that was at night, came back and they said just -- Dave told me to go back to work after they had their conversation.

ECF No. 27-1 at 51:14-52:9. Rodriguez argues this interaction in the context of the "totality of the circumstances" is direct evidence of discrimination that evidences a dispute of material fact. ECF No. 29 at 18-19. Dollar does not contradict this deposition testimony.

The corporate representative for Dollar stated by declaration that Rodriguez applied three times for Family and Medical Leave Act ("FMLA") leave and was denied because he was not eligible. ECF No. 27-4 at 3 ¶¶ 4, 5. Thereafter, Rodriguez "applied for Company Medical Leave under Dollar General's STD Program on June 13, 2016 and was approved for intermittent leave with a June 13, 2016 effective date." *Id*. ¶ 6. Later, Rodriguez was approved for a continuous medical leave of absence under the STD program and leave was approved "with a start date of June 22, 2016 and an end date of July 12, 2016." *Id*. ¶ 7. Rodriguez returned to work on July 13,

2016, his medical certification was updated, and his continuous STD medical leave resumed that same day. *Id*. at 7 ¶ 8. Rodriguez returned to work with restrictions on July 29, 2016. *Id*. ¶ 9. "The restrictions required him to take fifteen (15) minute breaks every two (2) hours. Plaintiff's continuous medical leave under Dollar General's STD policy was extended to October 4, 2016." *Id*. "Plaintiff's physician renewed the restriction of fifteen (15) minute breaks every (2) hours on or around August 31, 2016 with no end date. Thereafter, Dollar General further extended Plaintiff's paid STD leave through December 7, 2016. *Id*. ¶ 10. "Plaintiff's medical records further demonstrate his physician certified an ongoing need for fifteen (15) minute breaks every (2) hours on or around December 7, 2016. Accordingly, Dollar General extended Plaintiff's paid STD medical leave to December 16, 2016." *Id*. ¶ 11. Plaintiff exhausted his twenty-six (26) weeks of paid STD leave on December 16, 2016 and was terminated February 1, 2017. *Id*. ¶ 12-13.

Rodriguez's EEOC charge states that he was told by the Senior Human Resources Manager that Dollar does not accommodate any restrictions. ECF No. 27-1 at 174. Instead, when he first returned to work with sore feet, he was immediately placed on his personal leave for two weeks until it was exhausted. *Id*. He was then told to apply for STD leave. *Id*. When the STD was exhausted, he was instructed to apply for long term disability. *Id*.

Taking the evidence in the light most favorable to Rodriguez, the Court finds that Rodriguez has demonstrated genuine issues of material fact as to whether Dollar's legitimate, nondiscriminatory reason for his termination was pretextual or whether his disability played a motivating factor in his termination. Accordingly, summary judgment is denied on Rodriguez's discriminatory discharge claim.

## CONCLUSION

For the reasons stated above, *Dollar General Corporation's Amended Motion for Summary Judgment* (ECF No. 27) is DENIED. Dollar's motion to strike paragraph fourteen of Rodriguez's declaration is DENIED. The remainder of *Defendant Dollar General Corporation's Objections to Plaintiff's Evidence in Support of Plaintiff's Response to Defendant's Amended Motion for Summary Judgment, and Defendant Dollar General Corporation's Motion to Strike* (ECF No. 31) is DENIED AS MOOT.

This matter is scheduled for status conference via Zoom on **August 6, 2020 at 11:30 AM**. Any participant who has not received the Zoom invitation two business days prior to the conference must contact Magda Muzza, Courtroom Deputy, at (210) 244-5021 or Magda_Muzza@txwd.uscourts.gov. Participants unfamiliar with Zoom should test the application at least 24 hours prior to the conference.

It is so ORDERED this 30th day of July 2020.

*[signature: Jason Pulliam]*

JASON PULLIAM
UNITED STATES DISTRICT JUDGE